IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| LESLIE S.,[1] | Case No. 6:24-cv-01710-YY |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

YOU, Magistrate Judge.

Plaintiff Leslie S. seeks judicial review of the Social Security Commissioner's final decision denying her application for disability insurance benefits ("DIB") Title II of the Social Security Act ("SSA"). 42 U.S.C. §§ 401–33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

**PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits on July 9, 2021, alleging a disability onset date of October 31, 2018. Tr. 60. The Commissioner denied plaintiff's claims on January 24, 2022, and again upon reconsideration on August 30, 2022. Tr. 67, 82. Plaintiff filed

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION AND ORDER

a written request for a hearing, and a hearing was held before an administrative law judge on August 22, 2023. Tr. 34–58. The ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 17–28. The Appeals Council denied plaintiff's request for review on August 14, 2024. Tr. 1–6. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date, October 31, 2018. Tr. 19. At step two, the ALJ found that plaintiff had the following severe, medically determinable impairments: mood disorder, anxiety disorder, posttraumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD). *Id*. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20. The ALJ assessed plaintiff's residual functional capacity ("RFC"), as follows:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine and repetitive tasks; simple workplace decisions; occasional changes; occasional contact with supervisors and coworkers, but no public contact; needs a break of 1-2 minutes an hour, while remaining at the workstation, in order to refocus.

Tr. 21.

At step four, the ALJ determined that plaintiff was capable of performing her past relevant work as a price tag labeler. Tr. 27. Alternatively, at step five, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as cleaner, sorter, and assembler. Tr. 28. Therefore, the ALJ found that plaintiff was not disabled. *Id*.

DISCUSSION

Plaintiff argues the ALJ erred in (1) discounting her subjective symptom testimony, (2) evaluating the medical opinions of Joel Gregor, Psy.D., and Melinda Lowe, PMHNP-BC, and (3) addressing the lay witness testimony.

**I.   Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must

examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

At the hearing, plaintiff testified that she has been unable to work due to her mental health, including anxiety, major depression, and mania. Tr. 45–46. She further testified that she has always taken her prescribed medications and was only ever off her medications when advised by her doctors. Tr. 46. When asked about the effectiveness of her medication regiment, plaintiff testified that the medications control her mania but not her depression. Tr. 47. Plaintiff explained that she also takes Xanax as needed, such as when flying, seeing family, or for social engagements because she has a difficult time being around people and a "severe fear" of being in a car or vehicular accident. *Id*. When asked about whom she sees regularly, plaintiff stated that she sees her mother and grandkids "maybe" once a month and sees her friends "maybe" once a year because her friends travel a lot. Tr. 47–48. She also stated that she stopped going to the gym a year ago, in 2022. Tr. 48. When asked about her ability to drive or take public transportation, plaintiff stated that she cannot drive because of her anxiety and there is no public transportation around her for her to take, so her husband drives her to the grocery store and her appointments. *Id*. When asked if she gets along with others, plaintiff stated that she does "as long as I know them very well," but that socializing can still be difficult, especially in crowds, which plaintiff clarified as "over ten people." Tr. 49. When asked about her typical daily activities, plaintiff testified that she can cook and bake, she can do all household chores, she can read for up to an hour before needing a break, and she journals. Tr. 49–50. She also testified that she sometimes does not get out of bed until noon or later. Tr. 49. When asked to clarify how often she needs her

anxiety medication, plaintiff stated that she takes it "once a week or so" when her husband drives her to see her mom in the next town over because she is afraid of highways and freeways. Tr. 50. When asked about her levels of anxiety over the past four years, plaintiff testified that her anxiety levels are low when she is home alone but that she takes her anxiety medication when she has to get in the car and go places. Tr. 52.

In written testimony, plaintiff explained she cannot work in retail due to having to interact with customers and coworkers, and her anxiety, panic attacks, violent outbursts, short temper, and irrational behavior make such work impossible. Tr. 191. She also reiterated that she was hospitalized once in 2019 due to a mental breakdown and threat of self-harm. Tr. 45, 191. Plaintiff stated that she has a pet cat she feeds occasionally but that her husband provides a majority of the care. Tr. 192. She explained that a side effect of one of her medications is insomnia, that she can do all household chores unless her depression and anxiety are worse, and that she can drive unless her "medications impact [her] negatively." Tr. 192–93. Plaintiff stated that she shops every other week for a couple of hours, she enjoys hiking and reading, she reads every day, and she rarely goes for hikes because of her social anxiety and bipolar disorder. Tr. 194–95. Lastly, she stated that she struggles to maintain concentration, follow basic instructions, get along with others, and could not tolerate changes in her routine or handle stress. Tr. 195–97.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 22. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*.

A.     Daily Activities

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has found that activities such as using public transportation, shopping, preparing meals, performing household chores, performing personal care, socializing with friends, and watching television and playing video games for sustained periods may undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ reasonably concluded that some of plaintiff's daily activities conflicted with her testimony about her anxiety. The ALJ contrasted plaintiff's testimony about her impairments with evidence contained in plaintiff's records, noting that despite plaintiff's testimony that being around groups of people, traveling on planes, freeways, and highways, and being outside of the home induced fear and increased her anxiety levels, plaintiff was a "full time nomad" who only lived in Bend, Oregon, from August to October, and otherwise traveled, and maintained this lifestyle for three years until sometime in 2021. Tr. 471, 623. Other records indicate that plaintiff was able to shop for a couple of hours in stores, she was not only driving but getting better at driving in February 2023, and over the months of June, July, and August of 2023 she flew to and rented a car in Chicago, flew to Denver, and also traveled to Arizona to babysit her nephew. Tr. 636, 638, 641, 648, 672. In June of 2022, plaintiff went to a casino in Florence, and between October and November of that same year, she flew to Hawaii. Tr. 666, 695. Records further

7 – OPINION AND ORDER

show that, while plaintiff was on Depakote, the medication was effective but caused weight gain, which led plaintiff to engage in weightlifting at the gym as of February 2022. Tr. 481. Plaintiff testified she stopped going to the gym only a year prior to her hearing, which was held on August 22, 2023. Tr. 34, 48.

Accordingly, this was a clear and convincing reason for the ALJ to rely upon to discount plaintiff's testimony about the severity of her mental impairments.

### B. Objective Medical Evidence

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

The ALJ found that plaintiff's testimony was inconsistent with the objective medical evidence. *See* Tr. 22–25. The ALJ's conclusion is supported by substantial evidence. Plaintiff's records contain conflicting reports regarding the severity of her mental health impairments when compared to her testimony, both oral and written. Plaintiff testified that her anxiety has led to panic attacks, violent outbursts, a short temper, and irrational behavior; yet, as the ALJ noted,

plaintiff traveled extensively, attended the gym, and was able to shop in stores for a couple of hours despite claims that her anxiety is exacerbated by groups of more than ten people and by simply leaving her home. *See* Tr. 22-23, 34, 48, 191, 194, 471, 623, 636, 638, 641, 672.

Plaintiff testified that she had issues with concentration and depression; however, as the ALJ noted, records from her hospital discharge in January 2019 show that she exhibited intact memory, normal thought content and processes, good insight and judgment, and intact attention and concentration. Tr. 23, 319. The ALJ cited to numerous other records that "show overall conservative treatment and limited objective findings." Tr. 23. Records from 2020 consistently showed appropriate insight, fair judgment, goal-directed thought processes, and intact attention and alert attention, despite showing a depressed mood. Tr. 23, 412, 419, 422. Plaintiff reported Depakote was helpful in August 2020, and in May 2021, she stated that it was "quite effective." Tr. 23, 407, 621. The ALJ observed that records in July, October, November, and December 2021 continued to show generally normal findings, even though plaintiff reported experiencing some anger and continued experiencing levels of anxiety and depression. Tr. 471, 474, 477, 483, 592. The ALJ further cited to records in February 2022, where plaintiff's "bipolar was noted as stable" and she was weightlifting at the gym. Tr. 481. An exam from June 2022 continued the pattern of normal findings on mental status examinations, and a report from Joel Gregor, Psy.D., noted that plaintiff had made moderate progress towards reducing depressive symptoms, increasing her distress tolerance, and processing past trauma. Tr. 514, 541. While there was a noted decline in plaintiff's mental functioning in September 2022, her provider linked this decline to her recently discontinuing Lithium. Tr. 662. Examinations continued to show normal findings in October, November, and December 2022, and plaintiff also went on a trip to Hawaii during this time. Tr. 689–90, 695, 701. In November 2022, plaintiff stated she was less manic,

her moods were more level, and she felt "much better" on Abilify. Tr. 692. Records from 2023 note that Adderall has had good effects since starting, and that plaintiff's mental status examinations continue to be normal. Tr. 653, 704, 711, 715, 720–21, 726, 732, 739, 754, 761, 768.

Given the evidence, notably plaintiff's conflicting statements and activities, as well as her progress and objective findings, the ALJ did not err in discounting plaintiff's testimony for inconsistency.

## II.    Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–

92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839 at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

**A.    Joel Gregor, Psy.D.**

Dr. Gregor provided a mental health assessment on July 12, 2023. Tr. 548. According to Dr. Gregor, plaintiff has a generalized anxiety disorder, bipolar I disorder, PTSD, ADHD, and specific learning disorder with impairment in mathematics. *Id*. Dr. Gregor opined that plaintiff had mild impairment in performing her activities of daily living, moderate impairment in social functioning and concentration, and a marked impairment in her ability to adapt to stress. Tr. 549. He explained that plaintiff's anxiety was her greatest barrier to work, and that it interferes with her ability to concentrate, handle work-related stress, and maintain consistent productivity. Tr. 550. He further explained that even small expectations placed on plaintiff would create emotional distress. *Id*. Due to the symptoms she experiences, Dr. Gregor does not believe plaintiff could return to work in the foreseeable future. *Id*.

The ALJ found Dr. Gregor's opinion unpersuasive because plaintiff has responded well to medication, her records have generally documented normal mental status examination findings, as well as activities that do not support the level of severity alleged, and that Dr. Gregor's opinion in employability was conclusory. Tr. 26. Plaintiff asserts that Dr. Gregor's opinion on employability was not conclusory but based on his treatment, that plaintiff's mental health was cyclical in nature, and that plaintiff's activities did not contradict Dr. Gregor's assessment. Pl. Br. 5–8, ECF 9. However, as the ALJ reasonably found, Dr. Gregor's opinion is inconsistent with the medical record. Dr. Gregor noted that plaintiff had made moderate progress towards her goals of reducing depressive symptoms, increasing her distress tolerance, and processing past trauma. Tr. 541. And while plaintiff sometimes had downturns in her functioning, after starting other medications, plaintiff once again reported doing well. *See* Tr. 407 (Depakote effective), 481 (same), 621 (same), 662 (decline in functioning after stopping Lithium), 692 (stopped Depakote due to weight gain, less manic after starting Abilify). Dr.

12 – OPINION AND ORDER

Gregor also assessed a marked limitation in adaptation to stress as evidenced by social events and tasks like driving or going to the store; yet plaintiff continued to drive, was reportedly "getting better" at driving despite her anxiety, and even drove on her trip to Chicago. Tr. 549, 648, 672, 676. As for her stress in social situations, plaintiff could shop for hours, consistently traveled on planes, went to the gym, and went to a casino, along with various other outings. *See* Tr. 194, 471, 481, 623, 636, 638, 641, 657, 660, 666, 671–72. While plaintiff is correct that Dr. Gregor's opinion on employability was not conclusory, but an opinion based on observation, treatment, and accompanied by an explanation, plaintiff's records consistently reflected normal mental status findings despite ongoing complaints of anxiety and depression. Tr. 412, 419, 422, 471, 474, 477, 483, 592, 653, 689–90, 695, 701, 704, 711, 715, 720–21, 726, 732, 739, 754, 761, 768.

Accordingly, the ALJ did not err in assessing Dr. Gregor's opinion.

### B.     Melinda Lowe, PMHNP-BC

Melinda Lowe provided a medical opinion on July 11, 2023, opining that plaintiff suffers from bipolar disorder, characterized by mood fluctuations from manic episodes to severely depressed states, which can impair a person's ability to consistently function. Tr. 552. Lowe further opined that plaintiff's ADHD impaired her ability to organize tasks, sustain attention, follow through with instructions, and manage time effectively. *Id*. Lowe concluded her opinion with a list of plaintiff's currently-prescribed medications, and opined that plaintiff's symptoms resulting from bipolar disorder and ADHD prevented her from being able to maintain regular employment. *Id*.

The ALJ discounted Lowe's opinion because it was unsupported by the overall record, as well as Lowe's own treatment records, noting that medication management led to effective

control of plaintiff's symptoms and exams showed grossly normal findings. Tr. 26. Plaintiff argues that her mental impairments wax and wane and that the objective findings alone are insufficient. Pl. Br. 8–10.

Plaintiff's argument is largely addressed by the previous discussion regarding Dr. Gregor's opinion. While plaintiff complained of anxiety and depression, focusing on her extreme levels of anxiety when in social situations, leaving her house, and driving or flying as her biggest barrier, she consistently engaged in activities inconsistent with her allegations. For example, she regularly traveled by RV, car, and plane, drove, and went on various other outings, and went to the gym for a period of time. *See* Tr. 194, 471, 481, 549, 623, 636, 638, 641, 648, 657, 660, 666, 671–72, 676. While plaintiff had some ups and downs in her medication management, she generally reported doing well on certain medications. *See* Tr. 407, 481, 621, 662, 692. According to Lowe's treatment notes, and those of other providers, plaintiff also had normal findings on mental status exams. *See* Tr. 412, 419, 422, 471, 474, 477, 483, 592, 653, 689–90, 695, 701, 704, 711, 715, 720–21, 726, 732, 739, 754, 761, 768.

As such, the ALJ did not err in discounting Lowe's medical opinion.

### III.    Lay Witness Testimony

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id.* (citation and internal quotation omitted). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id.* at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ

validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").[2]

In the third-party report provided by plaintiff's spouse, he reported that plaintiff's anxiety, anger issues, depression, manic moods, and panic attacks precluded her from working because her past work had been in retail. Tr. 183. He explained that plaintiff was previously hospitalized because of depression that led to suicidal ideation, she struggles to maintain a regular schedule, her depression keeps her from functioning more than a few days a week, and she often sleeps for 15 hours a day. Tr. 183–84, He stated that she suffers from insomnia, he takes a majority role in caring for their cat, she is able to prepare meals if her medications do not "knock her out," and her depression often impairs her ability to do household chores. Tr. 184–85. He also stated that plaintiff needs reminders to complete household tasks, she has limited exposure to friends and family, she avoids social gatherings, she is able to drive and shop alone, and she has issues getting along with others due to PTSD and anger issues. Tr. 186–88. According to plaintiff's spouse, she is only able to pay attention for a few minutes before getting distracted, can handle only simple instructions, has to write down instructions that are spoken to her due to her inability to concentrate, and has no problems taking orders from authority figures, but it causes her anxiety. Tr. 187–88. He also described that plaintiff is incapable of handling stress or changes in routine, has frequent suicidal thoughts, daily outbursts of anger, and is regularly afraid of social activities with others. Tr. 189.

---

[2] Citing the revised regulations for medical source opinions, the Commissioner argues that the ALJ is "not required to articulate" how lay witness testimony is considered. Def. Br. 7, ECF 11. Although the Ninth Circuit has not decided this issue, district courts in this circuit have concluded that the new regulations have not eliminated the requirement that ALJs must consider and address lay witness testimony. *See Karen W. v. Comm'r Soc. Sec. Admin.*, 2025 WL 654113, at *8 (D. Or. Feb. 28, 2025) (citing cases).

The ALJ found the spouse's testimony inconsistent with the overall treatment record, which showed that plaintiff's symptoms were managed with medication and therapy. Tr. 23. The ALJ also noted that despite complaints of plaintiff being afraid and avoiding social interactions, she "traveled extensively, including on planes with others." *Id.* Therefore, the ALJ provided reasons germane to the witness and did not err in discounting the lay witness testimony.

## CONCLUSION

For the reasons given above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED December 30, 2025.

                                                                   /s/ Youlee Yim You
                                                                   Youlee Yim You
                                                                   United States Magistrate Judge